# Mitchell, Mayor &c. v. City of Gadsden.

## *Petition for Mandamus.*

1. *Authority of City of Gadsden to establish courthouse for holding the municipal court.*—Under the broad, general powers conferred by the charter of the city of Gadsden on its mayor and aldermen, to purchase and hold real estate for the benefit of the city; to make and adopt by-laws and ordinances, in whatever manner and upon whatever subject, to carry out the powers granted, and for the good government and order of said city, as they may think proper; to ordain and pass such ordinances and by-laws, not inconsistent with the laws of the State, as shall be needful for the government, police interest, welfare, and good order of said city; to pass laws for the creation and punishment of criminal offenses, *etc.,*—the board of mayor and aldermen, acting withing the limits of reasonable discretion, are authorized to acquire and provide a courthouse, within the city, and establish it as the place for holding the municipal courts; and the provision in the charter that the mayor (upon whom is conferred the jurisdiction and duty to try and punish violations of municipal laws) "shall keep his office in said city" does not confer on him exclusive and unalterable power and authority to designate the courthouse for the trial of offenders.

APPEAL from the City Court of Gadsden.

Heard before the Hon. JOHN H· DISQUE.

The appellee, the City of Gadsden, filed its petition in this case for a mandamus to compel the appellant, R. A. Mitchell, as mayor of said city, to hold the mayor's court in the place designated by the board of mayor

and aldermen. The petition shows the adoption by the board of mayor and aldermen of ordinances or resolutions selecting and designating a mayor's court-room, and requiring the mayor to hold court there ; and further shows the mayor's refusal.to hold court there. The application was resisted, principally on the ground, first raised by demurrer to the petition, that the board of mayor and aldermen have no power to prescribe where the mayor shall hold his court. The appeal is from a judgment awarding the writ of mandamus prayed for.

DORTCH & MARTIN, for appellant.

DENSON & BURNETT, *contra*.

HEAD, J.—The charter of the city of Gadsden provides, in the first section, that the city may purchase and hold real, personal and mixed property, and dispose of the same for the benefit of said city. In section 22 it is provided, that the mayor and aldermen of said city shall have full and complete powers to make and adopt by-laws and ordinances, in whatever manner and upon whatever subject, to carry out the powers granted, and for the good government and order of said city, as they may think proper ; and generally, and in addition to the powers specifically enumerated, which are declared to be no limitation upon the powers included in this general grant of powers, to ordain and pass such ordinances and by-laws, not inconsistent with the laws of the State, as shall be needful for the government, police interest, welfare and good order of said city. Ample provision is made in the act for the passage of laws for the creation and punishment of criminal offenses, and conferring upon the mayor the jurisdiction and duty to try and punish violations of such laws.

It would hardly seem questionable that, under these broad, general powers, the city, acting within the limits of reasonable discretion, is authorized to acquire and provide a court-house, within the city, and establish it as the place for holding the municipal courts. It would seem that the actual necessities of convenient and orderly municipal government would require such action on its part. But argument is made in opposition to the existence of such authority ; and it is predicated upon the pro-

visions of section 18 of the charter : "That it shall be
the mayor's duty to preside and keep order at the meet-
ings of the board ; he may call special meetings of the
board, whenever the interest of the city requires it; he
shall keep his office in said city, and hear and determine
all cases of violation of all by-laws or ordinances, or
charter of said city, and punish offenders, in such man-
ner as the board may direct." The contention is that
the requirement that the mayor shall keep his office in
the city implies exclusive and unalterable power and au-
thority in him to designate the *court-house* for the trial
of offenders. The position is wholly untenable. The
provision, when construed with the whole charter, and
in subservience of the important functions of govern-
ment conferred and to be exercised for the general wel-
fare of the city, means no more than that so long as
municipal control shall not intervene, and the mayor
shall be permitted to designate his own office, he must
keep it within the city ; and, indeed, the spirit of the
requirement, as well as the whole act, would prevent
the establishment of the mayor's office, as well as other
ordinary and necessary sites of city government, by
the municipal authorities themselves, outside of the
city limits. It was never intended that the corporate
authorities, entrusted with the city government, should
not have power to regulate and control these matters.
See the analysis and outcome of the conclusion. It is,
first, that the requirement in question implies that the
mayor only may designate the mayor's office ; next, this
implication itself implies that offenders may only be
tried in the mayor's office, or that the mayor only may
designate the place where they may be tried ; and, as a
practical proposition, it is also implied either that the
mayor himself may designate the place of the city prison,
or, if that function be conceded to the city (which alone
has the charter power to acquire property suitable for
such purpose) , the city is compelled to change the loca-
tion of the prison as often as the necessities or caprices
of a mayor may induce him to change the location of
his office and place of holding court, or else submit to
all such expense, inconvenience and hazard as the loca-
tion of the office and place of trial, remote from the
prison, might entail. Again, if the mayor only may
designate the court-house, so, also, upon the same prin-

ciple, only he may designate the council chamber; the place for, and manner of, keeping the important public records, books and documents, and the places of administration and safe keeping of the revenues and treasures of the city, its fire department, &c.   If the mayor's "*office*" means a *court-house*, it is not conceivable why it does not mean also the other places above mentioned. He has, or may have, important official connection with them, as he has with the business carried on in the courthouse or council chamber.   The proposition, in its essence, then, is that the city is absolutely shorn of all these functions, of such important and vital public concern, and the extraordinary situation is presented that the mayor is endowed with them by the simple requirement, in the enumeration of his duties and powers, that he must keep his office in the city.   We do not hesitate to declare that it is within municipal authority, under this charter, to provide for and establish any or all of these necessary governmental sites, within the city, including the mayor's office itself, and all other necessary offices; and provide, within reasonable limits, for the manner of keeping and administering the same; and to all such reasonable provisions it is the duty of the city officials to conform.

We concur, therefore, in the ruling of the city court, and its judgment is affirmed.